■ BOARD OF EDUCATION, HALF HOLLOW HILLS CENTRAL SCHOOL DISTRICT NO. 5, TOWNS OF HUNTINGTON AND BABYLON, Appellant, v STATEWIDE VENDING CORPORATION, Also Known as STATEWIDE INDUSTRIAL CATERING OF DIX HILLS, INC., Respondent, et al., Defendant. INTERNATIONAL FIDELITY INSURANCE COMPANY, Third-Party Plaintiff; AL HIRSCHBERGER et al., Third-Party Defendants-Respondents. (Action No. 1.) STATEWIDE INDUSTRIAL CATERING OF DIX HILLS, INC., Plaintiff, v HALF HOLLOW HILLS CENTRAL SCHOOL DISTRICT OF HUNTINGTON AND BABYLON, Defendant. (Action No. 2.) — In consolidated actions to recover damages for breach of contract, plaintiff appeals from so much of an order of the Supreme Court, Suffolk County (McInerney, J.), dated December

18, 1980, as granted defendants' motion in Action No. 1 for summary judgment, dismissing plaintiff's complaint on the ground a condition precedent was not performed. Order reversed, insofar as appealed from, on the law, with $50 costs and disbursements, motion for summary judgment is denied, plaintiff's complaint in Action No.. 1 dated March 14, 1977 is reinstated and plaintiff's complaint in Action No. 2 is dismissed. On June 1, 1976 plaintiff in Action No. 1, Board of Education of Half Hollow Hills Central School District No. 5 (school district), issued a "NOTICE TO BIDDERS", which solicited bids from private food service management companies to provide, maintain and operate cafeteria services for the district's school lunch program for the 1976-1977 school year. Defendant Statewide Vending Corp., also known as Statewide Industrial Catering of Dix Hills, Inc. (Statewide), submitted a bid, No. 799, meeting the bid specifications and guaranteeing the largest monetary return to the school district. On August 23, 1976 the school district resolved to award the contract to Statewide. On August 24, 1976 the "BID AWARD NOTICE" sent to Statewide and the unsuccessful bidders contained the following condition, which reads in pertinent part: "Award contingent upon approval of contract by New York State Education Department". The parties commenced performance under the contract prior to approval by the State Education Department of an executed contract in a form prescribed by the department commissioner. Both parties performed the contract for the months of September and October, 1976. However, on October 29, 1976, Statewide discontinued service, informing the school district that since there was an extensive loss being incurred by continued operation as a result of a contract increasing the wages and benefits of picketing cafeteria employees, it was withdrawing from providing the district with any further services. In December, 1976, the State Education Department provided State Aid reimbursement in the amount of $30,728.91 for the months of September and October of 1976. Subsequently, the school district commenced an action against Statewide to recover damages for breach of contract and an action against International Fidelity Insurance Co. (Statewide's surety) on its performance bond. International Fidelity in turn impleaded the principals of Statewide on their personal obligation to the surety. Statewide commenced an action against the school district in *quantum meruit* to recover for work, labor and services. The actions were consolidated pursuant to an order of the Supreme Court, Nassau County (Spatt, J.), dated November 9, 1979. Paragraph 29 of the "General Conditions" document, which conditions were agreed to by the parties, negates any inference that the contingency inserted in the bid award notice — "Award contingent upon approval of contract by New York State Education Department" — was a condition precedent to the *existence of a contract*. The provision provides that "Each bid will be received with the understanding that the acceptance thereof in writing by the school district, approved by the board of education, to furnish any or all of the items described therein shall constitute a contract between the successful bidder and the school district. Contract shall bind the successful bidder on his part to furnish and deliver at the prices and in accordance with the conditions of his bid. Contract shall bind the school district on its part to order from such successful bidder (except in the case of emergency) and to pay for at the contract prices, all items ordered and delivered, within ten (10) per cent over or under the award quantity, unless otherwise specified." We conclude from the aforesaid provision that the parties contemplated that a valid and enforceable contract came into existence upon adoption of the August 23, 1976 resolution by the board of education, in writing and subscribed by the district clerk, which accepted Statewide's bid to provide, maintain and operate cafeteria services for the school lunch program for the 1976-1977 school year. Although the language used by the school district in its bid award notice is

more in keeping with language employed in conditions precedent (see *Boro Motors Corp. v Century Motor Sales Corp.,* 18 Misc 2d 1009), the conduct of both parties in performing the terms of the contract for two months belies the contention that approval by the State Education Department of an executed contract in a form prescribed by the department commissioner was a condition precedent to the existence of a contract or to an obligation to immediately perform the contract. Furthermore, the contingency inserted in the bid award notice is a condition imposed by law, in accordance with section 305 (subd 14, par a) of the Education Law, which provides in pertinent part that "all contracts to provide, maintain and operate cafeteria or restaurant service by a private food service management company shall be awarded to the lowest responsible bidder, which responsibility shall be determined by the board of education or the trustee of a district, with power hereby vested in the commissioner *to reject* any or all bids if, in his opinion, the best interests of the district will be promoted thereby and, upon such rejection of all bids, the commissioner shall order the board of education or trustee of the district to seek, obtain and consider new proposals. All proposals for * * * cafeteria and restaurant service shall be in such form as the commissioner may prescribe" (emphasis added). We note the language of the statute is indicative of a condition subsequent, since it speaks in terms of "rejection". Furthermore, the conduct of the parties demonstrates that the parties interpreted the contingency as a condition subsequent. We conclude from paragraph 29 of the general conditions document, section 305 (subd 14, par a) of the Education Law and the conduct of the parties, that the parties were obligated to perform the contract upon acceptance of Statewide's bid by the school district. Said obligation would be extinguished only upon the happening of a condition subsequent, i.e., rejection by the State Education Department of an executed contract in a form prescribed by the commissioner. Under CPLR 3212 (subd [b]) this court has the authority to search the record and grant summary judgment to the nonmovant on appeal. Since we find there exists a valid and enforceable contract between the parties, Statewide's action against the school district to recover in *quantum meruit,* which was consolidated with Statewide's action for breach of contract, must be dismissed. (See *Levi v Power Conversion,* 47 AD2d 543.) Mangano, J. P., Gibbons, Cohalan and O'Connor, JJ., concur.